# EXHIBITS

Exhibit A

## ADJUSTABLE RATE NOTE

#### (Initial Period: Interest Only; Subsequent Period: One Year Treasury Index, Rate Caps)

THIS NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AT AN INITIAL INTEREST RATE AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.  THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES, AFTER THE INITIAL PERIOD, IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  THIS NOTE ALSO LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| FEBRUARY 22, 2005 | ELLICOTT CITY | MARYLAND |
|---|---|---|
| (Date) | (City) | (State) |

5 FARMSTEAD PLACE, MIDDLETOWN, MD  21769

(Property Address)

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****525,800.00    (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  5.375  % (the "Initial Interest Rate") for the first ONE HUNDRED TWENTY          (120 ) months of the term of this Note (the "Interest Only Period").  The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a payment every month.

I will make my monthly payments on the 1ST  day of each month beginning on APRIL 01      , 2005 .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on MARCH 01, 2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304                                   or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ ****2,355.15   , which equals one twelfth (1/12) of the amount of yearly interest due on the Principal at the Initial Interest Rate (the "Interest Only Payments").  This amount may change.

No payments of principal are due during the Interest Only Period.  The Interest Only Payments will not reduce the Principal amount of this Note.  Additional payments of principal may be made in accordance with Section 5 of this Note.

#### (C) Monthly Payment Changes

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The Initial Interest Rate I pay may change on the first day of MARCH, 2015      , and on that day every 12 MONTHS thereafter.  Each date on which my interest rate could change is called a "Change Date".

NMFL #5928 03/01      Initials: ES MS .        Page 1 of 4

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of **1** year(s), as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.375** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.375** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes on my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal during the Interest Only Period and at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayments to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of (i) interest only during the Interest Only Period or (ii) principal and interest after the Interest Only Period.

Initials: _ES_ _MS_

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Cost and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

NMFL #5598 03/01

Initials: *ES  MS .*

Page 3 of 4

If all or any part of the Property or any Interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under this Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | |
|---|---|---|
| _____ (Seal) -Borrower | ERNEST E SEAGRAVES (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | MISSY A SEAGRAVES (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | (Seal) -Borrower | _____ (Seal) -Borrower |
| _____ (Seal) -Borrower | (Seal) -Borrower | _____ (Seal) -Borrower |

[Sign Original Only]

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _Joan M. Mills_
Joan M. Mills, Vice President

Exhibit B

BK 5 1 7 4 PG 0 1 2 2 420
10D

Return To:
WELLS FARGO HOME MORTGAGE
3601 MINNESOTA DR. SUITE 200
BLOOMINGTON, MN 55435

*After recording pleas return to:*
**WORTHINGTON TITLE SERVICES**
**10328 BALT. NATIONAL PIKE**
**ELLICOTT CITY, MD 21042**

Prepared By:
WELLS FARGO BANK, N.A.

7445 NEW TECHNOLOGY WAY,,
FREDERICK, MD  217030000

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST

Treasurer of
Frederick County, Maryland
Recordation Tax Pd.
DATE 2/7/05
PER

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 22, 2005
together with all Riders to this document.
(B) "Borrower" is ERNEST E SEAGRAVES AND MISSY A SEAGRAVES, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES

| | |
|---|---|
| IMP FD SURE $ | 20.00 |
| RECORDING FEE | 20.00 |
| TOTAL | 40.00 |
| Rec# FR02    Rcpt # 00942 | |
| SKD   LKM    Blk # 1040 | |
| Mar 07, 2005 | 02:41 PM |

Form 3021  1/01

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-6(MD) (0005)
Page 1 of 15    Initials ES  MS
VMP MORTGAGE FORMS - (800)521-7291

BK 5 1 7 4 PG 0 1 2 3

Lender's address is P.O. BOX 10304, DES MOINES, IA  503060304

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is B. GEORGE BALLMAN

(E) "Note" means the promissory note signed by Borrower and dated FEBRUARY 22, 2005
The Note states that Borrower owes Lender FIVE HUNDRED TWENTY FIVE THOUSAND EIGHT
HUNDRED AND 00/100                                                                    Dollars
(U.S. $****525,800.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than MARCH 01, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [x] Other(s) [specify] *Legal Discription.*

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(MD) (0005)                    Page 2 of 15             Initials 25 MS               Form 3021  1/01

BK 5 1 7 4 PG 0 1 2 4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **FREDERICK** :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION MADE APART HEREIN

*SEE ADJUSTABLE RATE RIDER

Parcel ID Number:                                    which currently has the address of
5 FARMSTEAD PLACE                                                          [Street]
MIDDLETOWN                              [City], Maryland  21769          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(MD) (0005)                     Page 3 of 16         Initials: CS MS           Form 3021  1/01

BK 5 1 7 4 PG 0 1 2 5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 

BK 5 1 7 4 PG 0 1 2 6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(MD) (0008)                    Page 6 of 15              Initials *E S MS*.              Form 3021  1/01

BK 5 1 7 4 PG 0 1 2 8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

 -6(MD) (0005)

Page 7 of 15

Initials 

Form 3021 1/01

BK 5174 PG 0129

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(MD) (0005)                                    Page 8 of 15              Initials               Form 3021   1/01

BK 5174 PG 0130

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(MD) (0005)                Page 9 of 15            Initials _EC MS_            Form 3021    1/01

BK 5174 PG 0131

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(MD) (0005)                    Page 10 of 15                    Initials:                     Form 3021  1/01

RK 5174 PG 0132

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

 -6(MD) (0005)

Page 11 of 15

Initials 

Form 3021  1/01

BK 5 1 7 4 PG 0 1 3 3

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

Initials  cs  MS

BK 5 1 7 4 PG 0 1 3 4

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000                % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

BK 5174 PG 0135

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____          ET E Seagr                    _____ (Seal)
                                          ERNEST E SEAGRAVES                        -Borrower

_____          _____ (Seal)
                                          MISSY A SEAGRAVES                         -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                  -Borrower

BK 5 1 7 4 PG 0 1 3 6

**STATE OF MARYLAND,**                                                County ss: *Frederick*

I Hereby Certify, That on this *22* day of *February 2005*, before me, the subscriber, a Notary Public of the State of Maryland, in and for the COUNTY OF *Carroll* personally appeared ERNEST E SEAGRAVES AND MISSY A SEAGRAVES

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission Expires: _____

Notary Public

DENA MARIE HODGES
Notary Public
Carroll Co., MD
My Comm. Exps. Dec. 1, 2005

**STATE OF** *Maryland*                          *Howard* County ss:

I Hereby Certify, That on this *22* day of *February 2005* before me, the subscriber, a Notary Public of the State of *Maryland* and for the *County of Carroll* personally appeared *Dena M. Hodges*

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that she is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission Expires: _____

Notary Public

KARA J. BLICKENSTAFF
Notary Public, State of Maryland
County of Carroll
My Commission Expires August 20, 2008

This is to certify that the within instrument was prepared by    WELLS FARGO BANK, N.A.

a party to the instrument.

*Hope Stottlemeyer*
Hope Stottlemeyer, Loan Closer

Initials *ES MS*

-6(MD) (0005)                    Page 15 of 15                    Form 3021    1/01

BK 5174 PG 0137

# ADJUSTABLE RATE RIDER

### (Initial Period: Interest Only; Subsequent Period: One Year Treasury Index, Rate Caps)

This Adjustable Rate Rider is made this 22ND day of FEBRUARY, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed, (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5 FARMSTEAD PLACE, MIDDLETOWN, MD  21769

[Property Address]

THE NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AT AN INITIAL INTEREST RATE AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES, AFTER THE INITIAL PERIOD, IN THE BORROWER'S INTEREST RATE AND MONTHLY PAYMENT. THE NOTE ALSO LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of 5.375 %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Initial Interest Rate I pay may change on the first day of MARCH, 2015 , and on that day every 12 MONTHS thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year(s), as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

NMFL #8509 03/04

Initials: _CS MS_                    Page 1 of 3

BK 5 1 7 4 PG 0 1 3 8

If the Index is no longer available, the Note Holder will choose a new index based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                     percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.375 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO        percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER.**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to the purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

Initials _____  Page 2 of 3

BK 5 1 74 PG 01 34

However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
                            -Borrower   ERNEST E SEAGRAVES  -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower   MISSY A SEAGRAVES   -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower                       -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower                       -Borrower

[Sign Original Only]

FMFL #5090190                         Initials: ES MS        Page 3 of 3

BK 5174 PG 0140

# Exhibit A

BEING KNOWN AND DESIGNATED AS LOT NO. 89, AS SET FORTH ON THE PLAT ENTITLED, "FINAL PLAT, LOTS 75 THRU 79, AND 81 THRU 109, SECTION THREE, PLAT 4, GLENBROOK", WHICH PLAT IS RECORDED AMONG THE LAND RECORDS OF FREDERICK COUNTY, MARYLAND AT PLAT BOOK 75 AT PLAT 51.

The improvements thereon being known as No. 5 Farmstead place, Middletown, MD 21769.

Property Tax Parcel I.D. No.

BK 5174 PG 0141

# REFINANCE AFFIDAVIT

The borrower(s) hereby certify that this is a refinance of their primary residence, that this is their principal residence and that they are the original mortgagors on the following documents:

(1) Deed of Trust dated _February 27, 2004_, recorded in Liber _4459_, folio _0549_, with an unpaid principal balance due and owing in the amount of $ _464,548.14_.
AND
(2) Deed of Trust dated _February 27, 2004_, recorded in Liber _4459_, folio _0568_, with an unpaid principal balance due and owing in the amount of $ _58,714.06_.

Signed this _22_ day of _February_, 20_05_.

_____     _____
Witness                     Mortgagor

_____     _____
Witness                     Mortgagor

_____     _____
Witness                     Mortgagor

_____     _____
Witness                     Mortgagor

State of _Maryland_, County of _Frederick_

I hereby certify, That on this _22_ day of _February_, 20_05_, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared _Ernest E. Seagraves and Missy A. Seagraves_, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged the foregoing Affidavit to be his/her/their act, and in my presence signed and sealed the same.
In witness Whereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

_____

DENA MARIE HODGES
Notary Public
Carroll Co., MD
My Comm. Exps. Dec. 1, 2005

BK 5174 PG 0142

## State of Maryland Land Instrument Intake Sheet

[ ] Baltimore City    [ X ] County: Frederick

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*
*(Type or Print in Black Ink Only All Copies Must Be Legible)*

[ ] Check Box if Addendum Intake Form is Attached.

| 1 | Type(s) of Instruments | Deed | Mortgage | Other | Other |
|---|---|---|---|---|---|
| | | Deed of Trust | Lease | | |

| 2 | Conveyance Check Box | Improved Sale | Unimproved Sale | Multiple | Not an Arms- |
|---|---|---|---|---|---|
| | | Arms-Length *[1]* | Arms-Length *[2]* | Arms Length *[3]* | Length Sale *[9]* |

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation |
|---|---|---|
| | | State Transfer |
| | | County Transfer |

### 4 — Consideration and Tax Calculations

| Consideration | Amount | Finance Office Use Only |
|---|---|---|
| | | **Transfer and Recordation Tax Consideration** |
| Purchase Price/Consideration | $ .00 | |
| Any New Mortgage | $ 525,800.00 | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ 464,548.14 | x ( ) % = | $ |
| Other: Balance of 2nd Mtg. | $ 58,714.06 | Less Exemption Amount - | $ |
| | | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | x ( ) per $500 = | $ |
| Full Cash Value | $ 0.00 | TOTAL DUE | $ |

### 5 — Fees

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ | Agent: |
| Surcharge | $ 20.00 | $ | Tax Bill: |
| State Recordation Tax | $ 30.00 | $ | |
| State Transfer Tax | $ 0.00 | $ | C.B. Credit: |
| County Transfer Tax | $ 0.00 | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

### 6 — Description of Property

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No.(1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG | [ ] (5) |
|---|---|---|---|---|---|---|
| 03 | | / | | | | |

| Subdivision Name | Lot (3a) | Block(3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage(4) |
|---|---|---|---|---|---|
| Glenbrook | 89 | | three | 75/51 | |

Location/Address of Property Being Conveyed (2)
5 Farmstead Place, Middletown, MD 21769

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|

| Residential [ X ] or Non-Residential [ ] | Fee Simple [ X ] or Ground Rent [ ] | Amount: $N/A |
|---|---|---|
| Partial Conveyance? [ ] Yes [ X ] No | Description/Amt. of SqFt/Acreage Transferred: | N/A |

If Partial Conveyance, List Improvements Conveyed: N/A

### 7 — Transferred From

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| ERNEST E. SEAGRAVES | |
| MISSY A. SEAGRAVES | |
| **Doc. 1 – Owner(s) of Record, if Different from Grantor(s)** | **Doc. 2 – Owner(s) of Record, if Different from Grantor(s)** |

### 8 — Transferred To

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Wells Fargo Bank, N.A. | |

New Owner's (Grantee) Mailing Address
5 Farmstead Place, Middletown, MD 21769

### 9 — Other Names to Be Indexed

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 — nal Names to be Indexed (Optional) |
|---|---|
| B. George Ballman | |

### 10 — Contact/Mail Information

| | | [ X ] Return to Contact Person |
|---|---|---|
| Instrument Submitted By or Contact Person | | |
| Name: Worthington Title | | [ ] Hold for Pickup |
| Firm: Worthington Title Services, Inc. | | |
| Address: 10328 Baltimore National Pike, Ellicott City, MD 21042 | | [ ] Return Address Provided |
| Phone: Telephone: 410-750-3555 Fax: 410-750-3353 | | |

### 11 — IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER

| Assessment Information | [ X ] Yes [ ] No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | [ ] Yes [ X ] No | Does transfer include personal property? If yes, identify: |
| | [ ] Yes [ X ] No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

### Assessment Use Only - Do Not Write Below This Line

[ ] Terminal Verification    [ ] Agricultural Verification    [ ] Whole    [ ] Part    [ ] Tran. Process Verification

| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | |
|---|---|---|---|---|
| Year | | Geo. | Map | Sub | Block |
| Land | | Zoning | Grid | Plat | Lot |
| Buildings | | Use | Parcel | Section | Occ. Cd. |
| Total | | Town Cd | Ex. St | Ex. Cd | |
| REMARKS | | | | | |

Document drafted by and
RECORDING REQUESTED BY:
Wells Fargo Bank, N.A.
8480 Stagecoach Circle
MAC X3800-027
Frederick, MD 21701

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### LIMITED POWER OF ATTORNEY

**The trusts identified on the attached Schedule A (the "Trusts"),** by and through **U.S. Bank National Association,** a national banking association organized and existing under the laws of the United States and having an office at, 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN  55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Wells Fargo Bank, N.A., ("Servicer"), having an office at 8480 Stagecoach Circle, Frederick, MD 21701 and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity.   This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee.   These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby.   Please refer to **Schedule A** attached hereto.

1.    Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements, short sale transactions and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed or other security instrument to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the

transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the applicable servicing agreements for the Trusts listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee for the Trusts listed on Schedule A.

**Witness** my hand and seal my hand and seal this 16th day of November, 2017.

NO CORPORATE SEAL

_____
Witness: Guadalupe Gannett

_____
Witness: Hanna Mulugeh

_____
Attest: Richard P. Krupske, Trust Officer

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

By: _____
Becky L. Warren, Vice President

By: _____
John L. Linssen, Vice President

CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 16th day of November, 2017, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Becky L. Warren, John L. Linssen, and Richard P. Krupske, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President, and Trust Officer, respectively of U.S. Bank National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
                Joseph P. Wagner

My commission expires: 1/31/2021

JOSEPH P. WAGNER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2021

# Schedule A

| Client | Investor | Deal |
|--------|----------|------|
| 708 | Z45 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-12 |
| 708 | Z10 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-14 |
| 708 | Z12 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-16 |
| 708 | Z13 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-17 |
| 708 | Z14 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-18 |
| 708 | S97 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR1 |
| 708 | S99 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR2 |
| 708 | S01 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR3 |
| 708 | S04 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR4 |
| 708 | S05 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR5 |
| 708 | S06 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR6 |
| 708 | S09 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR7 |
| 708 | S11 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR8 |
| 708 | S10 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR9 |
| 708 | S12 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR10 |
| 708 | S13 | U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR11 |

Exhibit C

BK 09892 PG 0377

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC X9998-01P
PO BOX 1629
MINNEAPOLIS, MN 55440-9049

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Frederick, Maryland
"SEAGRAVES"

Date of Assignment: December 12th, 2013
Assignor: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, BY WELLS FARGO BANK, N.A. AS
THEIR ATTORNEY-IN-FACT at 60 LIVINGSTON AVE, ST. PAUL, MN 55107
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO
WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-AR7 at
60 LIVINGSTON AVE, ST. PAUL, MN 55107

Executed By: ERNEST E SEAGRAVES AND MISSY A SEAGRAVES, HUSBAND AND WIFE  To:
WELLS FARGO BANK, N.A.
Date of Deed of Trust: 02/22/2005 Recorded:  03/07/2005 in Book/Reel/Liber: 5174 Page/Folio: 0122 In
the County of Frederick, State of Maryland.

Property Address: 5 FARMSTEAD PLACE, MIDDLETOWN, MD 21769

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Deed of Trust having an original principal sum of $525,800.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor
hereby grants and conveys unto the said assignee, the assignor's interest under the Deed of Trust.
    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever,
subject to the terms contained in said Deed of Trust.

    IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, BY WELLS FARGO BANK, N.A. AS THEIR
ATTORNEY-IN-FACT POA: 08/09/2013 in Book/Reel/Liber: 09703 Page/Folio: 0021
On __/2·/3·/3__

By: _Michelle Erin Wiltren_
    Michelle Erin Wiltren
Vice President Loan Documentation

```
IMP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Rcpt# FR02     Rcpt # 77034
SRD    MRT     Blk # 1918
Dec 19, 2013        10:19 am
```

BK 0 9 8 9 2 PG 0 3 7 8

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 12·13·13, before me, Yves Akara Kenao a Notary Public in Dakota
County in the State of Minnesota, personally appeared Michelle Erin Wihren, Vice
President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_Yves Akara Kenao_ (signature)

Yves Akara Kenao
Notary Expires:  /  /
        1/31/17

YVES AKARA KENAO
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

This document prepared by and
when recorded, return to:

Wells Fargo Bank, N.A.
Attention: Final Documents
MAC X4701-02B
3601 Minnesota Drive Suite 200
Bloomington, MN 55435

Loan Number:
Service Number:
Chan:

## Assignment of Mortgage/Deed of Trust

For value received,
   Wells Fargo Bank, N.A.
   7001 Westown Parkway, West Des Moines, IA 50266

hereby sells, assigns and transfers to:
   WACHOVIA BANK, N.A., AS TRUSTEE
   4527 METROPOLITAN COURT  SUITE C
   FREDERICK, MD 21704

its successors and assigns all of its right, title, and interest to a certain Mortgage / Deed of Trust as follows:
Execution Date :  02/22/2005
Legal Name : ERNEST E SEAGRAVES

Beneficiary :
County :     FREDERICK      State :     MD
Recorded Date :     ADDRESS :  5 FARMSTEAD PLACE
                 MIDDLETOWN, MD 21769
Document Number :     BOOK :           PAGE :
Legal:



Tyrone Weedon
**Vice President Loan Documentation**

State of Maryland ( SS
County of Frederick)

On this Tuesday,    April 19, 2005      before me, the undersigned a Notary Public of the state of
Maryland, personally appeared Tyrone Weedon, respectively to me personally known, who being duly sworn,
did say that they are Vice President(s) of Loan Documentation respectively, of Wells Fargo Bank, N.A., and that
the seal affixed to the foregoing instrument is the corporate seal of said corporation by  authority of its Board
of Directors and the said Tyrone Weedon acknowledged the execution of said instrument to be the voluntary
act and deed of Wells Fargo Bank, N.A., by it voluntary done and executed.  Witnessed  by my hand and
notarial seal the day and last year above written.

Chlanh Pham
Notary Public
Frederick County, MD
My Commission Expires 08/01/2007

**NOTARY PUBLIC**

BK 7134 PG 0184

Recording Requested By:
WELLS FARGO HOME MORTGAGE

When Recorded Return To:

WELLS FARGO HOME MORTGAGE
1003 E BRIER DR
MAC X0501-022 **
SAN BERNARDINO, CA 92408

## CORPORATE ASSIGNMENT OF MORTGAGE/DEED OF TRUST

Frederick, Maryland
**SELLER'S SERVICING #:**          "SEAGRAVES"
**SELLER'S LENDER ID#:**

Date of Assignment: December 4th, 2008
Assignor: WELLS FARGO BANK, N.A. at MAC# X0501-022, 1003 E. BRIER DRIVE, SAN
BERNARDINO, CA 92408
Assignee: U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE at ONE FEDERAL STREET, 3RD
FLOOR, BOSTON, MA 02110

Executed By: ERNEST E SEAGRAVES AND MISSY A SEAGRAVES, HUSBAND AND WIFE To:
WELLS FARGO BANK, N.A.
Date of Deed of Trust: 02/22/2005 Recorded: 03/07/2005 in Book/Reel/Liber: 5174 Page/Folio: 0122 as
Instrument No.: N/A In Frederick, Maryland

Property Address: 5 FARMSTEAD PLACE, MIDDLETOWN, MD 21769

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named assignor, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Mortgage/Deed of Trust/Security Deed (Security Instrument) together with the Note or
Notes or other evidence of indebtedness (the "Note"), said note having an original principal sum of
$525,800.00 with interest, secured thereby, together with all moneys now owing or that may hereafter
become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the
assignor's beneficial interest under the Security Instrument.
TO HAVE AND TO HOLD the said Security Instrument and Note, and also the said property unto the
said assignee forever, subject to the terms contained in said Security Instrument and Note.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

WELLS FARGO BANK, N.A.
On December 4th, 2008

By:
VERONICA ROJAS, Vice President Loan
Documentation

IMP FD SURE $          20.00
RECORDING FEE          20.00
TOTAL                  40.00
Rcst FR03    Rcpt # 45775
SKD    JK    Blk # 1209
Dec 10, 2008      02:50 PM

BK 7 1 3 4 PG 0 1 8 5

CORPORATE ASSIGNMENT OF MORTGAGE/DEED OF TRUST Page 2 of 2

STATE OF California
COUNTY OF San Bernardino

On December 4th, 2008 before me, ESTHER RUIZ, Notary Public, personally appeared VERONICA
ROJAS , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

ESTHER RUIZ
Notary Expires: 06/26/2010 #1678036

ESTHER RUIZ
COMM. # 1678035
NOTARY PUBLIC-CALIFORNIA
SAN BERNARDINO COUNTY
MY COMM. EXP. JUNE 26, 2010

(This area for notarial seal)

VOL 4 3 3 7 PAGE 0 3 2

# AFFIDAVIT

The undersigned, <u>Charles F. Pedersen</u>a _Vice President_ of U.S. Bank National Association ("USB"), and Kevin Shire, a Vice President of Wachovia Bank, National Association ("Wachovia"; Wachovia and USB each a "Bank"), being duly sworn, each deposes and says that:

1.    I am authorized to execute this Affidavit on behalf of my Bank, and am doing so solely in my capacity as an authorized officer of such Bank.

2.    I have personal knowledge of the matters described in this Affidavit.

3.    Pursuant to a Purchase Agreement between Wachovia Corporation and USB, dated November 29, 2005, USB acquired substantially all of Wachovia's corporate trust business (the "Acquired Assets").

4.    The Acquired Assets included all of the mortgage-backed transactions described on Schedule A hereto (the "Mortgage-Backed Transactions").

5.    Accordingly, USB has succeeded Wachovia as trustee in the Mortgage-Backed Transactions.

**Shipman & Goodwin** LLP
Counselors at Law
One Constitution Plaza
Hartford, Connecticut 06103-1919
CXR

518894 v.0

Witnesses:

Jocelyn Jerin

Sonia Thampi

VOL 4337 PAGE 033



Name:  Charles F. Pedersen
Title:    Vice President
U.S. BANK NATIONAL ASSOCIATION

SUBSCRIBED AND SWORN TO before me this 30th day of September, 2008.

Notary Public:
My Commission Expires:  1-31-2010

JEANNE M ESCOBEDO
Notary Public
Minnesota
My Commission Expires January 31, 2010

VOL 4 3 3 7  PAGE 0 3 4

Witnesses:

_Dawn Randazzo_

_Carol Barone_

_Kevin J. Shire_
Name: Kevin Shire
Title:  Vice President
WACHOVIA BANK, NATIONAL
ASSOCIATION

SUBSCRIBED AND SWORN TO before me this 26th day of September 2008.

_Maxxxe E Williams_
Notary Public
My Commission Expires: 5/16/2011

518894 v.01

VOL 4 3 3 7 PAGE 0 3 5

# SCHEDULE A

ABFC Mortgage Loan Asset-Backed Certificates, Series 2002-WF1

ABFC Mortgage Loan Asset-Backed Certificates, Series 2002-WF2

ABFS Wachovia Mortgage Loan Trust 2004-2

ACE Securities Corp. Home Equity Loan Trust 1999-LB2 Home Equity Loan Pass-Through Certificates, Pooling & Servicing Agreement dated as of July 1, 1999

ACE Securities Corp. Home Equity Loan Trust Series 2001-HE1

ACE Securities Corp. Home Loan Trust 1999-A Asset Backed Notes, Indenture dated as of August 1, 1999

Aegis Asset Backed Securities Trust 2004-5

AEGIS Asset Backed Securities Trust 2005-2 Mortgage Backed Notes

Aegis Asset Backed Securities Trust Mortgage Pass Through Certificates 2005-5

Aegis Asset Backed Securities Trust Mortgage Pass Through Certificates 2005-6

Aegis Asset Backed Securities Trust Mortgage Pass Through Sertificates Series  2004-2

Aegis Asset-Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2004-6

Aegis Asset-Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-1

Aegis Asset-Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-3

Aegis Asset-Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-4

Aegis Asset-Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2005-4

American Residential Eagle Mortgage Trust 1 - Indenture dated as of June 1, 1998

Asset Backed Funding Corporation Mortgage Loan Asset-Backed Certificates, Series 2002-WF1, Pooling & Servicing Agreement dated as of 03/01/2002

Asset Backed Funding Corporation Mortgage Loan Asset-Backed Securities, Series 2002-WF2, Pooling & Servicing Agreement dated as of 09/26/2002

Baltic-American Mortgage Trust, Mortgage Asset-Backed Pass-Through Certificates, Series 2004-1

Banc of America Funding 2005-D Trust Mortgage Pass-Through Certificates, Series 2005-D

Banc of America Funding 2005-E Trust Mortgage Pass-Through Certificates, Series 2005-E

Banc of America Funding Coporation, Mortgage Pss-Through Certificates, Series 2005-A

Banc of America Funding Corp 2004-4 Trust, Mortgage Pass Through Certificates, Series 2004-4, dated  12/29/2004

Banc of America Funding Corp 2004-5 Trust, Mortgage Pass-Through Certificates, Series 2004-5, dated  12/29/2004

Banc of America Funding Corp. 2003-1 Trust, Mortgage Pass Through Certificates, Series 2003-1, dated  04/30/2003

Banc of America Funding Corp. 2004-1 Trust, Mortgage Pass-Thru Certificates, Series 2004-1, Dated 04/29/2004

Banc of America Funding Corporation 2004-C Trust, Mortgage Pass-Through Certificates, Series 2004-C Dated 11/30/2004

Banc of America Funding Corporation 2005-1 Trust, Mortgage Pass-Through Certificates, Series 2005-1, Dated 01/26/2005

Banc of America Funding Corporation 2005-2 Trust Mortgage Pass Through Certificates, Series 2005-2, DATED 3/28/2005

Banc of America Funding Corporation 2005-4 Trust, Mortgage Pass-Through Certificates, Series 2005-4, Dated 8/30/2005

Banc of America Funding Corporation 2005-5 Trust, Mortgage Pass-Through Certificates, Series 2005-5, Dated 9/29/2005

VOL 4 3 3 7 PAGE 0 4 8

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR6, Pool & Servicing Agreement dated as of 03/17/2005

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR7, Pooling and Servicing Agreement as of 4/18/2005.

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR8, Pooling and Servicing Agreement dated as of 5/18/2005.

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-4, Pooling and Servicing Agreement dated as of March 30, 2005

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certifices, Series 2005-13, Pooling and Servicing Agreement dated as of 10/27/2005.

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certifices, Series 2005-14, Pooling and Servicing Agreement dated as of 11/29/2005

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certjifices, Series 2005-15, Pooling and Servicing Agreement dated as of 11/29/2005

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certifictes, Series 2005-AR9, Pooling and Servicing Agreement dated as of 04/27/2005

Wells Fargo Asset Securities Corporation Mortgage Pass-Throught Certificates, Series 2003-A, Pooling & Servicing Agreement dated as of 01/30/2003

Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-B, Pooling & Servicing Agreement dated as of 02/27/2003

Wells Fargo Asset Securities Corporation
Mortgage Pass-Through Certificates, Series 2001-26, Pooling & Servicing Agreement dated as of 10/30/2001

Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR5, Pooling & Servicing Agreement dated 03/16/2005

REC'D OCT - 6 2008 @ 4:18 Pm

*Essie S. Labrot*
Essie S. Labrot, Town Clerk

TOWN OF WEST HARTFORD
TOWN CLERK'S OFFICE

2008 OCT -6 P 4: 18

0089b3

EXHIBIT A

## WELLS FARGO & COMPANY MASTER GUARANTEE
## AGREEMENT REGARDING CUSTODIAL P&I ACCOUNT FUNDS

**THIS MASTER GUARANTEE AGREEMENT** (the "Guarantee") dated as of May 1, 1999 is entered into by Wells Fargo & Company ("Wells Fargo"), a Delaware corporation, in favor of each trustee now or hereafter acting in such capacity for the benefit of the certificateholders of each outstanding and future series of Wells Fargo Asset Securities Corporation mortgage backed securities transactions (collectively, the "MBS Transactions"), including without limitation the trustees identified in Paragraph 8 hereof, and any successor trustee, all of which trustees are referred collectively in this Guarantee as the "Trustee."

**WHEREAS,** this Guarantee has been required by Standard & Poor's, Fitch, Inc., Duff & Phelps Credit Rating Co. and Moody's Investors Service, Inc. (collectively, the "Rating Agencies") (each of which has assigned ratings to certain of the classes issued in certain of the MBS Transactions) in connection with their agreement to permit Wells Fargo Bank, N.A., as servicer in the MBS Transactions (in such capacity, "Servicer"), to hold among Servicer's general corporate funds for a period of time principal and interest payments, insurance proceeds, liquidation proceeds and other amounts received by Servicer pertaining to the mortgage loans underlying the MBS Transactions serviced by Servicer (collectively, the "Mortgage Loans").

**WHEREAS,** Servicer is an indirect, wholly-owned subsidiary of Wells Fargo, a bank holding company, and Wells Fargo derives substantial benefit from Servicer's servicing of the Mortgage Loans pursuant to the terms of a separate servicing agreement between Wells Fargo Bank, N.A., as master servicer, and Servicer, as servicer, for each MBS Transaction (each, a "Servicing Agreement").

**WHEREAS,** to further induce the Rating Agencies to permit Servicer to withdraw funds from the Custodial P&I Accounts and commingle such funds with the general assets of Servicer to be used for general corporate purposes until such time as such funds are required by the terms of the applicable Servicing Agreement to be remitted to the related Certificate Account, Wells Fargo has agreed to guarantee the performance of Servicer's obligation under the Servicing Agreements to timely remit to the related Certificate Accounts the amounts, if any, so withdrawn from the Custodial P&I Accounts and so used by Servicer.

**NOW THEREFORE,** in consideration of the Rating Agencies' permitting the described arrangement, and for other good and valuable consideration the receipt and sufficiency of which Wells Fargo hereby acknowledges, Wells Fargo hereby agrees for the benefit of each Trustee for the benefit of the certificateholders of each MBS Transaction as follows:

1.  <u>Defined Terms.</u>  Capitalized terms used but not defined in this Guarantee shall have the respective meanings ascribed to such terms in each Servicing Agreement.

2.  <u>Guarantee of Certain Obligation of Servicer under Servicing Agreement.</u>
    Wells Fargo hereby absolutely, unconditionally and irrevocably guarantees to each Trustee for the benefit of the certificateholders of each MBS Transaction the full and

A-1

prompt performance, satisfaction and discharge of Servicer's obligation under each Servicing Agreement to remit to the related Certificate Account by the time specified in each Servicing Agreement amounts, if any, withdrawn by the Servicer from the related Custodial P&I Account and commingled with the Servicer's general assets (such obligation, the "Servicer's Obligation").

3.     Guarantee Absolute. The liability of Wells Fargo under this Guarantee shall be absolute and unconditional irrespective of: (i) any change in the time, manner of place of performance of, or in any other term of, the Servicer's Obligation; (ii) the avoidance or subordination of any Servicer's Obligation, or the invalidity or unenforceability thereof; (iii) the waiver, consent, extension, forbearance or granting of any indulgence, or other modification or amendment to any obligation of Servicer under the Servicing Agreement; including without limitation the Servicer's Obligation; (iv) the disallowance under bankruptcy or similar laws relating to insolvency applicable to Servicer of all or any portion of any claim by the Trustee or certificate holders for the performance, satisfaction, and discharge of the Servicer's Obligation; or (v) any other circumstance that might otherwise constitute a defense to, or a discharge of the Servicer's Obligation (except for an express written release or discharge of Servicer by the Trustee), all of the foregoing being expressly waived by Wells Fargo as defenses to its obligations under this Guarantee.

4.     Waiver. Wells Fargo hereby waives any requirement of promptness, diligence, presentment, demand, filing of claims with a court in the event of receivership or bankruptcy of Servicer, protest, or notice of protest with respect to the Servicer's Obligation, and notice of acceptance of this Guarantee.

5.     Reinstatement. Guarantor further agrees that, to the extent that the Servicer or the Guarantor makes a payment or payments to the Trustee, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Servicer or the Guarantor or their respective estate, trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, this Guarantee and the advances or part thereof which have been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date such initial payments, reduction or satisfaction occurred.

6.     No Waiver of Rights. No failure or delay on the part of the Trustee or the Trust Administrator, if applicable, in exercising any right or remedy arising under this Guarantee shall operate as a waiver of the Trustee's rights hereunder; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise hereunder or the exercise of any other right by or on behalf of the Trustee.

7.     Representation and Warranties. Wells Fargo hereby represents and warrants to the Trustee as follows:

A-2

(a)   Organization. Wells Fargo is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Wells Fargo is duly qualified and in good standing to transact business in each jurisdiction in which such qualification is necessary, other than those jurisdictions where the failure to be so qualified would not have a material adverse effect upon the business, assets or financial condition of Wells Fargo.

(b)   Authority. Wells Fargo has all requisite corporate power and authority to execute and enter into this Guarantee and to perform the obligations required of it hereunder. The execution and delivery of this Guarantee and the consummation of the undertakings contemplated hereby, have each been duly and validly authorized by all necessary corporate action, and this Guarantee constitutes a valid and legally binding agreement of Wells Fargo enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, moratorium, reorganization or other laws and regulations affecting the rights and remedies of creditors generally.

(c)   No Conflicts. The execution, delivery, and performance of this Guarantee by Wells Fargo will not constitute (a) a violation or breach of any terms or provisions of Wells Fargo's Restated Certificate of Incorporation or by-laws or (b) a violation or breach of any terms or provisions of, or a default under any provision of statutory law or published regulation or any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which Wells Fargo is a party or by which Wells Fargo is bound, or any order, rule or regulation binding on Wells Fargo and known to Wells Fargo of any court or governmental agency or body having jurisdiction over Wells Fargo.

8.   Notices. All notices and other communications hereunder shall be in writing (including a writing delivered by facsimile transmission) and shall be deemed to have been duly given (a) when delivered, if sent by registered or certified mail (return receipt requested), or (b) when delivered, if delivered personally or by facsimile, or (c) on the following business day, if sent by overnight mail or overnight courier, in each case to Wells Fargo and the Trustee at the following addresses (or at such other addresses as shall be specified by like notice):

If to Wells Fargo :

> Corporate Secretary
> Wells Fargo & Company
> Wells Fargo Center
> Sixth and Marquette
> Minneapolis, MN 55479-1026
> Facsimile No.: 612-667-6082

A-3

With a copy to:

> Corporate Treasury
> Wells Fargo & Company
> Wells Fargo Center
> Sixth and Marquette
> Minneapolis, MN 55479-1019
> Facsimile No.: 612-667-9908

If to the Trustee, to one of the following, as applicable for a given MBS Transaction:

(a)    Wachovia Bank, National Association, as Trustee
      401 South Tryon Street
      Charlotte, North Carolina 28202

or

(b)    United States Trust Company of New York, as Trustee
      114 West 47th Street
      New York, New York 10036

With a copy to:

> Wachovia Bank, National Association, as Trust Administrator
> 401 South Tryon Street
> Charlotte, North Carolina 28202

or

(c)    Firstar Trust Company, as Trustee
      555 North River Center Drive, Suite 301
      Milwaukee, Wisconsin 53212

With a copy to:

> Wachovia Bank, National Association, as Trust Administrator
> 410 South Tryon Street
> Charlotte, North Carolina 28202

or

(d)    Firstar Trust Company, as Trustee
      1555 North River Center Drive, Suite 301
      Milwaukee, Wisconsin 53212

With a copy to:

> US Bank Trust National Association, as Trust Administrator
> 180 East Fifth Street
> St. Paul, Minnesota 55101

A-4

or

    (e)    US Bank Trust National Association, as Trustee
            180 East Fifth Street
            St. Paul, Minnesota 55101

or to such other address to receive any such confirmation or notice as the notice party may have designated by written notice to the other notice party at the above address.

9.    <u>Successors and Assigns</u>.  This Guarantee shall be binding upon Wells Fargo, its successors, transferees, and assigns, and shall inure to the benefit of and be enforceable by the Trustee and its successors, transferees and assigns.

10.    <u>Waiver of Subrogation</u>. As long as any Servicer's Obligation has not been satisfied and discharged in full, Wells Fargo shall have no right of subrogation and hereby waives any right to enforce any remedy which the Trustee now has or may hereafter have against Servicer or any other guarantor of all or any part of the Servicer's Obligation.

11.    <u>Subordination</u>.  Wells Fargo agrees that any and all claims of Wells Fargo against Servicer or any other guarantor of all or any part of the Servicer's Obligation, whether arising by reason of any payment by Wells Fargo pursuant to the provisions hereof or otherwise, and all indebtedness of Servicer to Wells Fargo, shall be subordinate and subject in right of payment to the full and prompt performance, satisfaction, and discharge, of Servicer's Obligation.

12.    <u>Entire Agreement; Amendment and Waivers</u>.  This Guarantee contains the complete and entire agreement of Wells Fargo with respect to its provisions, and no change, waiver or amendment hereto shall be binding upon Wells except as separately set forth in a writing and duly executed by Wells Fargo.

13.    <u>Severability</u>.  The invalidity, illegality, or unenforceability of any provision of this Guarantee pursuant to judicial decree shall not affect the validity, legality, or enforceability of any other provisions of this Guarantee, all of which other provisions shall remain in full force and effect as written.

14.    <u>Governing Law</u>.  This Guarantee shall be governed by and construed in accordance with the laws of the State of New York (regardless of the laws that might otherwise govern under applicable principles of conflicts of law or comity).

NYLIB5 828029.2

**IN WITNESS WHEREOF**, the undersigned, a duly authorized officer of the Guarantor, has executed this Guarantee on behalf of the Guarantor as of the day and year first written above.

WELLS FARGO & COMPANY

By _____
      Rodney L. Jacobs
      Its Chief Financial Officer

A-6

## EXHIBIT D

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

| IN RE | CHAPTER 13 |
|---|---|
| MISSY A. SEAGRAVES | CASE NO.  13-15034-LSS |
| DEBTOR(S) | |

### DECLARATION IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY

I, **Crystal M. Massey**, declare under penalty of perjury as follows:

1.    I am a/an **Vice President Loan Documentation** of Wells Fargo Bank, N.A. ("Wells Fargo") and am authorized to sign this declaration on behalf of Wells Fargo as servicing agent for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR7.  This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records.  I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor(s) concerning the property securing such Account.

3.    The information in this declaration is taken from Wells Fargo's business records regarding the Account.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information

transmitted by persons with personal knowledge; and (b) kept in course of Wells Fargo's regularly conducted business activities. It is the regular practice of Wells Fargo to create and maintain such records.

4. The Debtor(s) Missy A Seagraves, Ernest E Seagraves has/have executed and delivered or is/are otherwise obligated with respect to the attached promissory note (the "Debt Agreement"). Pursuant to the attached Deed of Trust (the "Deed of Trust"), all obligations of the Debtor(s) under and with respect to the Debt Agreement and the Deed of Trust are secured by the property referenced in the Motion.

5. The following documents are attached as exhibits and incorporated herein by reference:

(a) Attached hereto as Exhibit 1 is a post-petition payment history.


I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 11th day of December, 2017.


Crystal M. Massey
Vice President Loan Documentation
Wells Fargo Bank, N.A as servicer for
U.S. Bank National Association, as
Trustee, successor in interest to Wachovia Bank,
National Association, as Trustee for Wells Fargo
Asset Securities Corporation, Mortgage Pass-
Through Certificates, Series 2005-AR7

Exhibit 1

Debtor name:  MISSY A SEAGRAVES                    Bk Filing Date:  3/22/2013                    First PP PmtDueDate/Amt:  4/1/2013 / $3333.39

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| | | | | | | $0.00 |
| | | 4/15/2013 | $2,260.06 | | | $2,260.06 |
| | | 5/21/2013 | $2,260.00 | | | $4,520.06 |
| 4/1/2013 | $3,333.39 | | | 5/24/2013 | $3,333.39 | $1,186.67 |
| | | 6/24/2013 | $2,260.00 | | | $3,446.67 |
| 5/1/2013 | $3,333.39 | | | 6/27/2013 | $3,333.39 | $113.28 |
| | | 7/22/2013 | $2,260.00 | | | $2,373.28 |
| | | 9/12/2013 | $2,260.00 | | | $4,633.28 |
| 6/1/2013 | $3,333.39 | | | 9/17/2013 | $3,333.39 | $1,299.89 |
| | | 10/11/2013 | $2,260.00 | | | $3,559.89 |
| 7/1/2013 | $3,333.39 | | | 10/22/2013 | $3,333.39 | $226.50 |
| 8/1/2013 | $3,333.39 | 11/12/2013 | $2,260.00 | 11/12/2013 | $2,260.06 | $226.44 |
| | | 12/16/2013 | $2,260.00 | | | $2,486.44 |
| | | 1/7/2014 | $1,073.33 | | | $3,559.77 |
| 9/1/2013 | $3,333.39 | | | 1/13/2014 | $3,333.39 | $226.38 |
| 10/1/2013 | $3,333.39 | 1/13/2014 | $2,260.00 | 1/13/2014 | $2,260.06 | $226.32 |
| | | 2/18/2014 | $2,260.00 | | | $2,486.32 |
| 11/1/2013 | $3,333.39 | 3/17/2014 | $2,260.00 | 3/17/2014 | $2,260.06 | $2,486.26 |
| 11/1/2013 | ($3,333.39) | | | 3/28/2014 | ($2,260.06) | $4,746.32 |
| 10/1/2013 | ($3,333.39) | | | 3/28/2014 | ($2,260.06) | $7,006.38 |
| 9/1/2013 | ($3,333.39) | | | 3/28/2014 | ($2,260.06) | $9,266.44 |
| 8/1/2013 | ($3,333.39) | | | 3/28/2014 | ($2,260.06) | $11,526.50 |
| 8/1/2013 | $3,333.39 | | | 3/31/2014 | $5,480.05 | $6,046.45 |
| 9/1/2013 | $3,333.39 | | | 3/31/2014 | $2,260.06 | $3,786.39 |
| 10/1/2013 | $3,333.39 | | | 3/31/2014 | $2,260.06 | $1,526.33 |
| | | 4/10/2014 | ($1,073.33) | | | $453.00 |
| | | 4/15/2014 | $2,260.00 | | | $2,713.00 |
| | | 5/19/2014 | $2,260.00 | | | $4,973.00 |
| 11/1/2013 | $3,333.39 | | | 5/20/2014 | $3,333.39 | $1,639.61 |
| | | 6/13/2014 | $2,260.00 | | | $3,899.61 |
| 12/1/2013 | $3,333.39 | | | 6/23/2014 | $3,333.39 | $566.22 |
| | | 7/14/2014 | $2,260.00 | | | $2,826.22 |
| | | 8/5/2014 | $2,260.00 | | | $5,086.22 |
| 1/1/2014 | $3,333.39 | | | 8/7/2014 | $3,333.39 | $1,752.83 |
| | | 12/9/2014 | $2,300.00 | | | $4,052.83 |
| 2/1/2014 | $3,333.39 | | | 12/11/2014 | $3,147.64 | $905.19 |

Case Number:  1315034

Debtor name:  MISSY A SEAGRAVES          Bk Filing Date:  3/22/2013          First PP PmtDueDate/Amt:  4/1/2013 / $3333.39

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | | | | | 1/18/2015 | $185.75 | $719.44 |
| | | | 1/20/2015 | $2,000.00 | | | $2,719.44 |
| | | | 1/23/2015 | $1,073.32 | | | $3,792.76 |
| | | | 1/23/2015 | ($1,073.32) | | | $2,719.44 |
| | | | 2/10/2015 | $2,000.00 | | | $4,719.44 |
| | 3/1/2014 | $3,333.39 | | | 2/13/2015 | $3,333.39 | $1,386.05 |
| | 4/1/2014 | $3,147.64 | 3/20/2015 | $2,300.00 | 3/20/2015 | $3,147.64 | $538.41 |
| | | | 4/16/2015 | $2,300.00 | | | $2,838.41 |
| | 5/1/2014 | $3,147.64 | 5/18/2015 | $2,300.00 | 5/18/2015 | $3,147.64 | $1,990.77 |
| | 6/1/2014 | $3,147.64 | 6/22/2015 | $2,300.00 | 6/22/2015 | $3,147.64 | $1,143.13 |
| | | | 6/22/2015 | $2,190.26 | | | $3,333.39 |
| | 7/1/2014 | $3,147.64 | | | 7/7/2015 | $3,333.39 | $0.00 |
| | | | 7/14/2015 | $3,000.00 | | | $3,000.00 |
| | 7/1/2014 | ($3,147.64) | | | 7/24/2015 | ($3,333.39) | $6,333.39 |
| | | | 7/24/2015 | ($2,190.26) | | | $4,143.13 |
| | 7/1/2014 | $3,147.64 | | | 7/27/2015 | $3,147.64 | $995.49 |
| | 8/1/2014 | $3,147.64 | 8/13/2015 | $2,500.00 | 8/13/2015 | $3,147.64 | $347.85 |
| | 9/1/2014 | $3,147.64 | 9/18/2015 | $3,000.00 | 9/18/2015 | $3,147.64 | $200.21 |
| | | | 10/14/2015 | $2,600.00 | | | $2,800.21 |
| | 10/1/2014 | $3,147.64 | 11/27/2015 | $1,000.00 | 11/27/2015 | $3,147.64 | $652.57 |
| | | | | | 11/30/2015 | ($1,073.44) | $1,726.01 |
| | | | 11/30/2015 | ($0.11) | | | $1,725.90 |
| | 11/1/2014 | $3,147.64 | 12/7/2015 | $2,000.00 | 12/7/2015 | $3,147.64 | $578.26 |
| | 12/1/2014 | $3,147.64 | 3/11/2016 | $3,000.00 | 3/11/2016 | $3,147.64 | $430.62 |
| | | | 4/18/2016 | $2,000.00 | | | $2,430.62 |
| | 1/1/2015 | $3,147.64 | 5/10/2016 | $2,000.00 | 5/10/2016 | $3,147.64 | $1,282.98 |
| | 2/1/2015 | $3,147.64 | 6/9/2016 | $2,000.00 | 6/9/2016 | $3,147.64 | $135.34 |
| | | | 8/15/2016 | $1,000.00 | | | $1,135.34 |
| | | | 8/15/2016 | $1,300.00 | | | $2,435.34 |
| | 2/1/2015 | ($3,147.64) | | | 8/15/2017 | ($3,147.64) | $5,582.98 |
| | | | 8/15/2017 | ($4,520.01) | | | $1,062.97 |
| | | | | | 9/5/2017 | $887.69 | $175.28 |
| | | | | | 10/16/2017 | ($185.74) | $361.02 |
| | Due date adj. Co-mingled funds | | | | | | $361.02 |
| | | | 12/7/2017 | $701.95 | | | $1,062.97 |
| | 4/1/2015 | $3,572.24 | | | | | |

Case Number:  1315034

Debtor name:  MISSY A SEAGRAVES                    Bk Filing Date:  3/22/2013                    First PP PmtDueDate/Amt:  4/1/2013 / $3333.39

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | 5/1/2015 | $3,572.24 | | | | | |
| | 6/1/2015 | $3,572.24 | | | | | |
| | 7/1/2015 | $3,572.24 | | | | | |
| | 8/1/2015 | $3,572.24 | | | | | |
| | 9/1/2015 | $3,572.24 | | | | | |
| | 10/1/2015 | $3,572.24 | | | | | |
| | 11/1/2015 | $3,572.24 | | | | | |
| | 12/1/2015 | $3,572.24 | | | | | |
| | 1/1/2016 | $3,572.24 | | | | | |
| | 2/1/2016 | $3,572.24 | | | | | |
| | 3/1/2016 | $3,609.52 | | | | | |
| | 4/1/2016 | $3,700.88 | | | | | |
| | 5/1/2016 | $3,700.88 | | | | | |
| | 6/1/2016 | $3,700.88 | | | | | |
| | 7/1/2016 | $3,700.88 | | | | | |
| | 8/1/2016 | $3,700.88 | | | | | |
| | 9/1/2016 | $3,700.88 | | | | | |
| | 10/1/2016 | $3,700.88 | | | | | |
| | 11/1/2016 | $3,700.88 | | | | | |
| | 12/1/2016 | $3,700.88 | | | | | |
| | 1/1/2017 | $3,700.88 | | | | | |
| | 2/1/2017 | $3,700.88 | | | | | |
| | 3/1/2017 | $3,700.88 | | | | | |
| | 4/1/2017 | $3,759.85 | | | | | |
| | 5/1/2017 | $3,791.39 | | | | | |
| | 6/1/2017 | $3,791.39 | | | | | |
| | 7/1/2017 | $3,791.39 | | | | | |
| | 8/1/2017 | $3,791.39 | | | | | |
| | 9/1/2017 | $3,791.39 | | | | | |
| | 10/1/2017 | $3,791.39 | | | | | |
| | 11/1/2017 | $3,791.39 | | | | | |
| | 12/1/2017 | $3,791.39 | | | | | |
| Totals | | $192,882.77 | | $73,241.89 | | $72,178.92 | |

Case Number:  1315034